**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-40009-01-DDC** |
| | |
| **DUSTIN WAYNE MCPHERSON (01),** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Defendant Dustin Wayne McPherson has moved for an Order modifying his conditions of release. *See* Doc. 72. The Order he seeks, if granted, would modify the conditions of his term of supervised release to require "the remainder of his RRC placement" be modified to house arrest. Mr. McPherson's motion also asserts that he is scheduled for release from the halfway house on June 7, 2020—about 9 days from now. *Id.* at 1.

Mr. McPherson argues that two reasons support his request. The first one asserts that "when the novel coronavirus infects the Topeka RRC"—the halfway house where Mr. McPherson currently resides—the facility will "be locked down." *Id.* He reasons that this lockdown would prevent him from reporting to work and likely cause him to lose his job. *Id.* His second argument claims that "release to home confinement and location monitoring will facilitate pro-social contact with his family." *Id.*

The government submitted a Response (Doc. 75) to the motion, and Mr. McPherson then submitted a Reply (Doc. 76). After the parties completed briefing the motion, the court contacted counsel to inquire about a time for a hearing on the motion. Mr. McPherson's counsel advised the court that Mr. McPherson did not request a hearing and, instead, asked the court to

decide his motion on the papers.  Finding neither of defendant's arguments persuasive, the court

denies Mr. McPherson's motion.  The following paragraphs explain why.

Some context explains why Mr. McPherson currently resides at the Topeka RRC.  About

11 months ago, the United States Probation Office filed a Violation Report.  Doc. 31 (filed June

17, 2019).  This report accused Mr. McPherson of repeatedly violating his conditions of

supervised release during a term that had begun about a year earlier, in June 2018.  *Id.* at 1.

Namely, the Violation Report reported that Mr. McPherson had used methamphetamine nine

different times between August 2018 and May 2019.  Mr. McPherson first used meth, according

to the report, about 60 days after his term of supervised release had begun.  *Id.* at 1–3 (accusing

Mr. McPherson of methamphetamine use on:  August 16, 2018; August 26, 2018; October 2,

2018; around October 23, 2018; around November 15, 2018; March 22, 2019; April 15, 2019;

May 19, 2019; and May 28, 2019).  *According to the probation officer, Mr. McPherson admitted*

*using methamphetamine on each occasion.  Id.*  During this run of alleged drug use, the

probation office directed Mr. McPherson to report to the RRC where he lived for about four

months.  He did well during his time at the RRC, which lasted from mid-November 2018 until

mid-February 2019.  So, according to the probation office, he was discharged and "returned to

live with his wife and mother."  *Id.* at 2.  But, according to the Violation Report, Mr. McPherson

returned to meth use within a month and continued using through mid-April 2019.  He then

moved into Oxford House, which sponsors a sober living environment, in mid-April.  The

Oxford House personnel reported that Mr. McPherson had refused to provide a specimen for

urinalysis—something required of its residents—so it expelled Mr. McPherson from that living

arrangement.  *Id.*  The probation office reported that his usage continued through late May 2019,

and on June 3, 2019, the office petitioned the court to issue a warrant for Mr. McPherson's arrest.  Doc. 24.

Revocation proceedings followed and, over the next two months, Mr. McPherson requested continuances so that he could file a motion to vacate his conviction under 28 U.S.C. § 2255.  Docs. 32, 34, & 36.  Ultimately, Mr. McPherson filed his 2255 motion on September 9, 2019.  Doc. 38.  He then moved to reopen his detention hearing and on September 16, 2019, the court granted him release from custody to the RRC.  Docs. 43 & 44.  This release required Mr. McPherson to remain in custody until a bed became available at the RRC.  Doc. 44.  The United States Probation Office reported that a bed at the RRC became available to Mr. McPherson on October 11, 2019.  Doc. 57 at 3.  But shortly before it became available, the probation office learned that state law enforcement officials had issued a warrant for Mr. McPherson.  *Id.*  This warrant stemmed from a traffic stop in October 2018 and new charges against Mr. McPherson.  But the probation officer alleged that Mr. McPherson didn't inform her of this contact with a law enforcement officer or the resulting warrant until October 2019.  She thus filed an Amended Violation Report on October 29, 2019.  *See id.* at 5.  Mr. McPherson responded to this Amended Violation Report by asking for more continuances.  Docs. 58, 64.

Finally, on February 10, 2020, Mr. McPherson's counsel orally moved to modify defendant's conditions of supervised release so that he could reside at an RRC for 90 days.  He also asked the court to continue his final revocation hearing by the same length of time to give him the opportunity to demonstrate he could comply with his conditions.  Doc. 66.  The government didn't object, and the court granted Mr. McPherson's motion.  The court modified Mr. McPherson's condition as requested and continued the final revocation hearing until May 18, 2020.  *Id.*  But there was more.  Just two days later, on February 12, 2020, Mr. McPherson

filed a motion to release him from custody "so he [could] post bond" with the Kansas jurisdiction who had issued the outstanding warrant for Mr. McPherson.  Doc. 67 at 1.  The court thus advanced the final revocation hearing from the May 18 setting to February 24, 2020.  Doc. 68. On February 24, 2020, the court ordered Mr. McPherson released from federal custody to Kansas authorities on the existing state warrant and, if released by state authorities, ordered him to reside at the RRC under an existing halfway house condition.  *See* Docs. 69, 70.  The court also reset Mr. McPherson's final revocation hearing for May 18, 2020.  Doc. 70.

This winding procedural history leads to Mr. McPherson's current motion, which now asks the court to modify his conditions to release him from the RRC now, instead of June 7, 2020, when, apparently, his RRC condition will expire.  The court denies the requested modification for four principal reasons.

First, the principal reason offered as support for the motion relies on rank speculation. Mr. McPherson argues that "when" the COVID-19 virus infects the Topeka RRC—where he currently resides—its operator will lock down the facility.  This, in turn, Mr. McPherson says, will keep him from reporting to work and thus cost him his job.  The court is not persuaded by Mr. McPherson's reasoning.  The principal problem with his argument is that it lives in the "what if" world.  Mr. McPherson concedes that there "is no indication that the Topeka RRC has any positive cases at this point."  Doc. 72 at 2.  Also, nothing supports Mr. McPherson's assertion that his RRC would restrict his movement so he could not go to work.  Our court already has rejected motions to modify that rely on such "generalized . . . fears and speculation." *United States v. Clark*, No. 19-40068-01-HLT/ADM, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).  The court again rejects arguments that invoke rank speculation.

4

Second, Mr. McPherson asks the court to release him to home confinement, where he would live with his wife, his two children, and his 67-year old mother, who suffers from chronic obstructive pulmonary disease. Doc. 72 at 2. This is the very home where Mr. McPherson lived when he was released from the RRC in February 2019. According to the Violation Report's allegations, Mr. McPherson, while living there, quickly returned to methamphetamine use within the month. The court is unwilling to return Mr. McPherson to the environment where the Violation Report alleges he has used controlled substances in the past (as he appears to concede).[1]

Third, Mr. McPherson argues that his current living arrangement gives him less opportunity to see his family than he anticipated. Doc. 76 at 1–2 ("The limited time when he does see his family is not nearly what he expected when he went to the RRC. And it's not close to the quality time that he could get with his family if he lived under the same room [with them]."). Mr. McPherson's disappointment is unfortunate, but Mr. McPherson's own conduct placed him in this situation. Mr. McPherson is living at the RRC because he asked the court to adopt a condition requiring him to live there. Also, Mr. McPherson has made a series of choices that set the stage for this request. In 2016, though federal law prohibited him from possessing a firearm, he chose to possess one. Once he had served the custody component of his sentence for the resulting felony conviction, he began a term of supervised release on June 13, 2018. According to the allegations against Mr. McPherson—and his own admissions—he chose to violate his conditions by using methamphetamine nine times during 2018 and 2019. In lieu of moving forward on those allegations, Mr. McPherson asked the court to continue the

---

[1]       The court recognizes that Mr. McPherson can't live in an RRC forever. But the court is unwilling to terminate his current living arrangement—one he requested—early in exchange for an environment where he allegedly has used meth while living there in the past. And certainly, the court is not willing to terminate the benefits of the structured lifestyle at the RRC early.

proceedings so that he could demonstrate his ability to comply with his conditions.  Mr.

McPherson's decision to ask the court to send him to the RRC was a perfectly logical one.  But it

leaves little room for him to complain about the disappointments he is experiencing in that living

arrangement.

Last, and least persuasively, Mr. McPherson's Reply argues that the court "should also

consider [his] 28 U.S.C. § 2255 petition challenging his conviction under *Rehaif v. United States*,

139 S. Ct. 2191 (2019), in which he demonstrates that his plea was not knowing and voluntary."

Doc. 76 at 1–2 (citing Docs. 38 & 61).  This motion was filed long ago, in September 2019.  It

argues the court should vacate the underlying conviction and thus remove the legal foundation

for the term of supervised release that Mr. McPherson allegedly has violated.  The court adopted

an extended briefing schedule at Mr. McPherson's request, and the parties briefed the motion

fully.  The court was prepared to do the work necessary to decide whether his motion was

meritorious.  But during a hearing on December 16, 2019, Mr. McPherson asked the court,

instead, to hold his motion in abeyance so the parties could try to agree on a global resolution

that would obviate Mr. McPherson's challenge to his conviction.  The work needed to decide an

important motion asking the court to vacate a conviction doesn't come with an on/off switch that

the court can flip back on short notice.  Mr. McPherson asked the court to stand down on his

motion and it did so.  The court is not prepared to accredit that motion now after Mr. McPherson

himself asked the court to stand down on ruling it.

The court has considered Mr. McPherson's request under the factors in 18 U.S.C. §

3553(a) that the court must consider when it decides a motion to modify.  *See* 18 U.S.C. §

3583(e)(2) (specifying the factors in subsections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),

(a)(4), (a)(5), (a)(6), and (a)(7)).  Exercising its authority under 18 U.S.C. § 3583(e)(2), *United*

*States v. Begay*, 631 F.3d 1168, 1172 (10th Cir. 2011), the court declines to make the modification sought by Mr. McPherson's motion.  No good reason warrants the change it requests.

**IT IS THEREFORE ORDERED THAT** defendant Dustin Wayne McPherson's Motion to Modify Conditions of Release (Doc. 72) is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of May, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**